UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

KELLY BYSOUTH,
    Plaintiff,

-vs-                                Case No.
                                        Hon.

FLEET MANAGEMENT,
MLA HOLDINGS, LLC,
NATIONAL PAYMENT SOLUTIONS OF NEW YORK, LLC,
RECOVERY SERVICES AND RESTITUTION,
CAPTURE FINANCIAL, LLC,
MIDWEST FIDELITY SERVICES, LLC,
JMK & ASSOCIATES, INC.
GERALD LEWIS,
JOHN ALT,
LAWRENCE KIRSCH,
MICHAEL ROBINSON,
D. AL BOULWARE,
MICHAEL POWELL,
TRUDY TETER-BISHOP,
TROY FULK,
JENNIFER MILOS
    Defendants.

**<u>COMPLAINT & JURY DEMAND</u>**

*Plaintiff, Kelly Bysouth, states the following claims for relief:*

**<u>Jurisdiction</u>**

1.    This Court has jurisdiction under the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, *et. seq.*, the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2.  This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the federal law claims.

## Venue

3.  The transactions and occurrences which give rise to this action, namely the collection calls received by Plaintiff, occurred in Oakland County, Michigan.

4.  Venue is proper in the Eastern District of Michigan.

## Parties

5.  The Plaintiff to this lawsuit is Kelly Bysouth ("Ms. Bysouth"), who resides in Commerce, Michigan.  Ms. Bysouth is an executive, who is fully employed, and who has no outstanding past due debt of her own.

6.  The Defendant Companies to this lawsuit are as follows:

   a.  Fleet Management ("Fleet"), which is a foreign corporation doing business in Michigan.

   b.  MLA Holdings, LLC ("MLA"), which is a foreign corporation doing business in Michigan.

   c.  National Payment Solutions of New York, LLC ("NPS"), which is a foreign corporation doing business in Michigan.

2

d.   Recovery Services and Restitution ("RSR"), which is a foreign corporation doing business in Michigan.

e.   Capture Financial, LLC ("Capture"), which is a foreign corporation doing business in Michigan, with two principal places of business.

f.   Midwest Fidelity Services, LLC ("MFS"), which is a foreign corporation doing business in Michigan.

g.   JMK & Associates, Inc. (JMK) which is a foreign corporation doing business in Michigan.

7.   The Defendant Principal Individuals to this lawsuit are as follows:

a.   Gerald Lewis, in his capacity as President of MLA.  Upon information and belief, Mr. Lewis regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a.  He created MLA, manages the operations of MLA, oversees collection activity of MLA, designed and drafted the procedures and tactics to collect debts on behalf of MLA, benefitted from the unlawful collection practices of MLA in the form of collections, controlled the day-to-day operation of MLA, indirectly engaged in the collection of debts from Ms. Bysouth, engaged in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. §

1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth.

b.   John Alt ("Mr. Alt") in his capacity as Director of Operations at NPS. Upon information and belief, Mr. Alt regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a, manages the operations of NPS, oversees collection activity of NPS, designed and drafted the procedures and tactics to collect debts on behalf of NPS, benefitted from the unlawful collection practices of NPS in the form of collections, control the day-to-day operation of NPS, indirectly engaged in the collection of debts from Ms. Bysouth, engage in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth.

c.   Lawrence Kirsch, in his capacity as organizer and manager of NPS. Upon information and belief, Mr. Kirsch regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a, manages the operations of NPS, oversees collection activity of NPS, designed and drafted the procedures and tactics to collect debts on behalf of NPS, benefitted from the unlawful collection practices of NPS

4

in the form of collections, control the day-to-day operation of NPS, indirectly engaged in the collection of debts from Ms. Bysouth, engage in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth,

d.  Michael Robinson, in his capacity as owner of NPS.  Upon information and belief, Mr. Robinson regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a,  created NPS, manages the operations of NPS, oversees collection activity of NPS, designed and drafted the procedures and tactics to collect debts on behalf of NPS, benefitted from the unlawful collection practices of NPS in the form of collections, control the day-to-day operation of NPS, indirectly engaged in the collection of debts from Ms. Bysouth, engage in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth,

e.  D. Al Boulware ("Mr. Boulware") in his capacity as organizer of Capture.  Upon information and belief, Mr. Boulware regularly collects

5

debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. §
1692a, manages the operations of Capture, oversees collection activity
of Capture,  designed and drafted the procedures and tactics to collect
debts on behalf of Capture, benefitted from the unlawful collection
practices of Capture in the form of collections, control the day-to-day
operation of Capture, indirectly engaged in the collection of debts from
Ms. Bysouth, engage in the collection of debts owed to another using
instrumentalities of interstate commerce and is a debt collector for
purposes of 15 U.S.C. § 1692a, and engaged the services of other debt
collectors to collect from Ms. Bysouth,

f.    Michael Powell, in his capacity as organizer of Midwest.   Upon
information and belief, Mr. Powell regularly collects debts and is a debt
collector for purposes of the FDCPA, 15 U.S.C. § 1692a manages the
operations of Midwest, oversees collection activity of Midwest,
designed and drafted the procedures and tactics to collect debts on
behalf of Midwest, benefitted from the unlawful collection practices of
Midwest in the form of collections, control the day-to-day operation of
Midwest, indirectly engaged in the collection of debts from Ms.
Bysouth, engage in the collection of debts owed to another using

6

instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth,

g.    Trudy Teter-Bishop, in her capacity as co-owner of Midwest.   Upon information and belief, Ms. Teter-Bishop, regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a manages the operations of Midwest, oversees collection activity of Midwest, designed and drafted the procedures and tactics to collect debts on behalf of Midwest, benefitted from the unlawful collection practices of Midwest in the form of collections, control the day-to-day operation of Midwest, indirectly engaged in the collection of debts from Ms. Bysouth, engage in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth,

h.    Troy Fulk, in his capacity as co-owner of Midwest.   Upon information and belief, Mr. Fulk regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a, manages the operations of Midwest, oversees collection activity of Midwest, designed and drafted

7

the procedures and tactics to collect debts on behalf of Midwest, benefitted from the unlawful collection practices of Midwest in the form of collections, control the day-to-day operation of Midwest, indirectly engaged in the collection of debts from Ms. Bysouth, engage in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth,

i.     Jennifer Milos ("Ms. Milos") is the President of JMK & Associates, and controls the day to day operation of its collection efforts.  Ms. Milos regularly collects debts and is a debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a.  Upon information and belief, Ms. Milos is the owner and operator of JMK, manages the operations of JMK, oversees collection activity of JMK, designed and drafted the procedures and tactics to collect debts on behalf of JMK, benefitted from the unlawful collection practices of JMK in the form of collections, control the day-to-day operation of JMK, indirectly engaged in the collection of debts from Ms. Bysouth, engage in the collection of debts owed to another using instrumentalities of interstate commerce and is a debt

8

collector for purposes of 15 U.S.C. § 1692a, and engaged the services of other debt collectors to collect from Ms. Bysouth,

j.   John and/or Jane Does 1-4, managers of Defendant Companies. Plaintiff is informed and believes and on that basis alleges that Defendant Does 1-4 are officer, directors, or managing agents of Defendant Companies who are responsible for Defendant Companies' pattern and practice of abusive, deceptive, and unfair debt collection practices in relation to attempted collection of the Great Rock debt.

k.   John and/or Jane Does 5-10, employees and potential managing agents of Defendant Companies, and who use the following aliases, among possible others, when calling consumers to collect debts: Brenda Johnson, John Duval, Nicholas Smith, Timothy Connors, Kathy Doe and Andrew Doe.

## General Allegations

8.   Each of the Defendants with the exception of Great Rock, regularly collect debts owed to another and, therefore, each meets the definition of a "debt collector" under 15. U.S.C. § 1692a(6).

## The Great Rock Financial Debt

9.   On December 14, 2011, Great Rock Financial deposited funds into a

9

Huntington Bank account.

10.   Upon information and belief those funds represented the principal amount of a "Payday" loan issued to an individual who is not Ms. Bysouth.

11.   Ms. Bysouth had no relationship to that account and did not know of its existence.

12.   Ms. Bysouth had  no relationship to the holder of that account and does not know that individual.

13.   Ms. Bysouth did not apply for or take out the loan.

14.   Ms. Bysouth never requested, received or used the funds from that loan.

15.   Upon information and belief, the individual who took out the loan, failed to repay that loan.

16.   Great Rock then engaged the services of Capture Financial, (a debt collector for purposes of the FDCPA and a collection agency for purposes of the Michigan Collection Practices Act).

17.   Capture Financial engaged the service of Midwest Fidelity to collect the debt.

18.   Midwest Fidelity, acting either on the information provided by the true debtor, or information provided by a consumer reporting agency, began collection activity against Ms. Bysouth.

19.   Midwest Fidelity initiated harassing phone calls to Ms. Bysouth.  In those

phone calls, Midwest Fidelity threatened Ms. Bysouth with arrest.

20.   In a phone call on September 27, 2012, Ms. Bysouth disputed the debt to Midwest Fidelityand told it that she did not owe the debt and was not the true debtor.

21.   Midwest Fidelity returned the debt to Great Rock.

22.   Midwest Fidelity did not send Ms. Bysouth the notice required by 15 U.S.C. § 1692 or M.C.L. § 339.918.

23.   Midwest Fidelity failed to inform Great Rock that Ms. Bysouth had disputed the debt and that she had not taken out the loan thus causing additional collection activity to continue relative to this debt; alternatively Midwest Fidelity did inform Great Rock that Ms. Bysouth had disputed the debt and that she had not taken out the loan, and Great Rock continued its collection activity against Ms. Bysouth, unabated by the knowledge that she did not owe the debt.

24.   In turn, Great Rock engaged the services of Fleet Management, who negotiated the sale of the debt to MLA.

25.   MLA engaged the services of NPS to collect the debt.

26.   All calls made by NPS to collect from Ms. Bysouth were made on behalf of MLA for the benefit of its owner, Mr. Lewis.

27.   NPS is owned and operated by Lawrence Kirsch and Michael Robinson, who

control its operations.

28.     Through its agent Brenda Johnson, NPS, began a series of calls to Ms.

Bysouth, purporting to be a  law office and in the process of serving process,

and leaving harassing and threatening messages.

29.     On December 5, 2013, Ms. Johnson  called the cellular phone of Ms. Bysouth

and left the following message:

> "Hello Kelly. This is Brenda Johnson. I'm calling with
> attorney William Evan's office. We're calling, you are
> scheduled for service in regard to a complaint and we have
> the details. We're faxing over information to Monica Long,
> she is the Head of the HR Department of the Company.
> You need the information right away, it is time-sensitive.
> We also want to go over the case and complaint. Contact
> 716-418-8653. Thank you."

30.     The "William Evans" law office does not exist and Ms. Johnson did not work

for a law office.

31.     Ms. Bysouth attempted to return this call multiple times, at which time she was

connected to the voice mail box of Brenda Johnson with Criminal Services of

NPS.

32.     NPS placed calls to Ms. Bysouth's cell phone using an "automatic telephone

dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

33.     NPS's alleged use of an autodialer is supported by a showing of multiple,

repeated calls in a short amount of time, as well as through the admission of

NPS's Director of Operations, John Alt.

34.

35.  Ms. Bysouth never gave consent to NPS to be contacted on her cellular phone number.

36.  The calls from Defendants have caused numerous interruptions and disruptions of Ms. Bysouth's work, social engagements, and recreation.

37.  Ms. Bysouth called Ms. Johnson back and was directed to a voice mail box that informed Ms. Bysouth that Ms. Johnson worked for "criminal service" at NPS.

38.  NPS also initiated calls to Ms. Bysouth's mother, Maxing Kapla, and disclosed information about the alleged debt owed by Ms. Bysouth.

39.  Through counsel, Ms. Bysouth called back the number left by Ms. Johnson again, and was immediately connected with the voice mail of Mike Robinson of NPS and January 20, 2014.

40.  On January 20, 2014, Ms. Bysouth's counsel spoke with a representative of NPS who identified himself as John Duval.

41.  During this conversation, Mr. Duval stated the following: that he was a debt collector for NPS; that his company held the debt in question.

42.  Mr. Duval further stated that if Ms. Bysouth or her counsel wanted to validate the debt, they should call MLAs because, according to Mr. Duval, MLA held

the original contract.

43. On January 20, 2014, Plaintiff's counsel did, in fact, call MLA and spoke with a representative of MLA who referred to herself as Kathy.

44. During this conversation, Kathy relayed the following information: the debt MLA was calling Ms. Bysouth about originated in December 2011, was charged-off in February 2012, originally belonged to Great Rock, was purchased by MLA from Fleet, and had since been sold by MLA to NPS.

45. Later on January 20, 2014, Ms. Bysouth's counsel spoke with John Alt, Director of Operations at NPS.

46. During this conversation, Mr. Alt stated the following: NPS's client is MLA, the original debt belongs to Great Rock, and NPS is not associated with William Evans Law Firm or SCS.

47. Also during this conversation, Mr. Alt acknowledged that NPS has placed calls using an autodialer dialer to Plaintiff's phone number, ending in 4395.

48. Mr. Alt is the Director of Operations at NPS and controls the actions of NPS's staff of debt collectors.

49. Mr. Alt acknowledged that NPS had contacted Ms. Bysouth using an automated dialer.

50. Mr. Alt and NPS refused to identify their actual street address.

51.  NPS placed those calls to Ms. Bysouth on her cell phone and home phone.

52.  After speaking with Ms. Bysouth's Counsel, NPS ceased collection activities.

53.  NPS did not issue any of the notices required by 15 U.S.C. § 1692g or M.C.L. § 339.615a.

54.  NPS does not maintain any physical address that can be found by conventional means.

55.  NPS returned the debt to MLA.

56.  NPS failed to inform MLA that Ms. Bysouth had disputed the debt and that she had not taken out the loan thus causing additional collection activity to continue relative to this debt; alternatively NPS did inform MLA that Ms. Bysouth had disputed the debt and that she had not taken out the loan, and MLA continued its collection activity against Ms. Bysouth, unabated by the knowledge that she did not owe the debt.

57.  In Turn, MLA forwarded the debt to RSR for further collection activity.

58.  All calls made by RSR were made on behalf of MLA for the benefit of Mr. Lewis, its owner.

59.  Acting on behalf of RSR, Nick Smith contacted Ms. Bysouth on May 8, 2014.

60.  Mr. Smith did not provide the notices required by 15 U.S.C. § 1692e(11).

61.  Mr. Smith threatened Ms. Bysouth with litigation and arrest.

62.    On May 8, 2014 a representative of RSR who identified himself as Nicholas Smith called Ms. Bysouth on her cellular phone but did not leave a message or identify himself.  Mr. Smith also called Ms. Bysouth on her home phone.

63.    On this same day, Mr. Smith also called Ms. Bysouth's mother, Maxine Kapla, on her land line.

64.    Mr. Smith left a voice mail on Ms. Kapla's answering machine in which he stated that he represented Oakland County, and that charges were going to be brought against Ms. Bysouth to collect the debt she allegedly owed.

65.    On May 11, 2014, Ms. Bysouth's counsel spoke with a representative of RSR who identified himself as Nicholas Smith.

66.    During this conversation, Mr. Smith stated

   a.    that he worked for Recovery Services and Restitution ("RSR");

   b.    that the debt RSR was collecting on was a loan originating December 14, 2011 with original creditor, Great Rock;

   c.    that Great Rock deposited $500 into a Huntington National bank account that was scheduled to be paid back for a total of $800;

   d.    that the debt was charged-off on February 10, 2012; and

   e.    that MLA is the current holder of the debt and RSR's client for which RSR is attempting collection.

67.    Mr. Smith did not provide the notices required by 15 U.S.C. § 1692e(11).

68.    On May 11, 2014, Counsel for Ms. Bysouth also spoke with Mr. Connors.

69.    During this conversation, Mr. Connors stated that payments are only accepted via online credit card or debit card payments, and check payments are not accepted.

70.    Further, Mr. Connors stated that Ms. Bysouth's case is in the "arbitration process" and a case is being built to possibly file charges against her in Oakland County.

71.    When Ms. Bysouth's counsel asked Mr. Connors if he was referring to a criminal prosecution, Mr. Connors hung up.

72.    Mr. Connors did not provide the notices required by 15 U.S.C. § 1692e(11).

## The Cash Jar Debt

73.    On December 15, 2011, Cash Jar  deposited funds into a Huntington Bank account.

74.    Upon information and belief those funds represented the principal amount of a "Payday" loan issued to an individual who is not Ms. Bysouth.

75.    Ms. Bysouth had no relationship to that account and did not know of its existence.

76.    Ms. Bysouth had  no relationship to the holder of that account and does not

know that individual.

77.   Ms. Bysouth did not apply for or take out the loan.

78.   Ms. Bysouth never requested, received or used the funds from that loan.

79.   Upon information and belief, the individual who took out the loan, failed to repay that loan.

80.   Cash Jar then sold the debt to First Reliance to collect the debt.

81.   First Reliance, in turn, hired SCS to collect the debt.

82.   On January 9, 2014, Ms. Bysouth received a call from Lisa McNamara of SCS which threatened her with prosecution and service of legal papers.

83.   SCS did not intend to initiate any legal proceeding or file charges.

84.   Mrs. Bysouth returned the call.

85.   Ms. Bysouth heard an automated message system that announced"If you have been served a summons for a lawsuit from this office, please ask to speak with someone from the legal outsourcing department. Please hold for the next available associate, and have your file or case number on hand."

86.   The phone system them directed Ms. Bysouth to Edwin; who verified her name and last 4 of social security number.

87.   Edwin informed Ms. Bysouth that a court proceeding had been initiated against her for check fraud.

18

88.  No such proceedings had been filed.

89.  Edwin informed her that he saw a fraud alert on her file, and she could show

Judge/Oakland County her evidence of fraud.

90.  Edwin informed Ms. Bysouth that she could be served at her home or at her

work place, Advantage Building Maintenance.

91.  Ms. Bysouth does not work at Advantage Building Maintenence.

92.  On January 20, 2014, Counsel for Ms. Bysouth contacted SCS and spoke to

Tom Callahan.

93.  Mr. Callahan informed Counsel for Ms. Bysouth Edwin no longer works with

SCS and that Ms. Bysouth's account had been "pulled" from SCS due to a

fraud claim.

### The HSBC Debt

94.  Ms. Bysouth does not have any outstanding debt to HSBC.

95.  Nonetheless, JMK & Associates contacted Ms. Bysouth to collect a debt that

they claimed she owed to HSBC.

96.  JMC used an automated voice message and an automated dialer to contact Ms.

Bysouth on her cell phone without consent and left the following automated

message once a day for several weeks:

> "This is your employer's office" [unintelligible]
> "Failure to respond to summons could result in court

appearance, default judgment"....etc

-For questions, contact person filing against you at
1-855-792-6476

97.    In the course of that call, JMK threatened Ms. Bysouth with service of process
and instructed her to present ID to receive that process.

98.    JMK did not intend to initiate any suit.

## COUNT I – Telephone Consumer Protection Act

99.    Ms.  Bysouth incorporates the preceding allegations by reference.

100.   Ms. Bysouth maintains a cellular phone via a "cellular telephone service" as
described in 47 U.S.C. § 227(b)(1)A)(iii).

101.   Ms. Bysouth maintains her cellular phone for her own personal convenience,
to maintain contact with family and friends, and for emergency purposes.

102.   At all times material and relevant hereto, NPS, Recovery Services and
Restitution, and JMK controlled and/or operated "automatic telephone dialing
systems" as defined by the TCPA 47 U.S.C. § 227 (a)(1) and 47 C.F.R.
64.1200(f)(1).

103.   NPS, Recovery Services and Restitution, and JMK placed non-emergency
telephone calls to Ms. Bysouth's cellular telephone using an automatic
telephone dialing system or pre-recorded or artificial voice without the prior
express consent of Ms. Bysouth, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

20

104.   The officers of NPS, MLA, Recovery Services and Restitution, and JMK including Mr. Alt, Mr. Kirsch, Mr. Robinson, Mr. Lewis, Mr. Boulware, Mr. Powell, Ms. Teter-Bishop, Mr. Fulk, and Jennifer Milos are each personally liable for each violation of the TCPA as they are officers and agents who created, authorized and/or implemented the telephone policies, procedures and practiced which resulted in the violations of the TCPA set forth herein.

105.   Mr. Lewis and MLA is responsible for collection calls by its third party collector, NPS, the same as if it had placed the calls itself for actions in violation of the TCPA.

106.   Mr. Alt, Mr. Kirsch, Mr. Robinson, Mr. Lewis, Mr. Boulware, Mr. Powell, Ms. Teter-Bishop, Mr. Fulk, and Jennifer Milos violated the TCPA, 47 U.S.C. § 227 *et seq.* in relation to Ms. Bysouth, and did so willfully.

107.   Ms. Bysouth has suffered damages as a result of these violations of the TCPA.

## COUNT II– Fair Debt Collection Practices Act
## (All Defendants)

108.   Ms. Bysouth incorporates the preceding allegations by reference.

109.   At all relevant times–in the ordinary course of business–Defendants regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

110.   Defendants are "debt collectors" under the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. §1692a(6).

111.    At all times relevant to this complaint, Defendants sought to collect a

"consumer" debt from Ms. Bysouth.

112.    Defendants have violated the provisions of the FDCPA, including 15 U.S.C.

§ 1692b, 1692c, 1692d, 1692e, 1692f, and 1692g.

113.    Ms. Bysouth has suffered damages as a result of these violations of the

FDCPA.

## COUNT  III – Michigan Occupational Code as alternative to claims under the Michigan Collection Practices Act (MLA Holding, SSC, JMK, NPS RSR, Fleet Management, First Reliance and Capture Financial)

114.    Ms. Bysouth incorporates the preceding allegations by reference.

115.    MLA Holding, SSC, JMK, NPS RSR, Fleet Management, First Reliance and

Capture Financial are each a "collection agency" as that term is defined in

the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

116.    Ms. Bysouth is a debtor as that term is defined in M.C.L. § 339.901(f), as

she is allegedly obligated to pat the debt at issue.

117.    MLA Holding, SSC, JMK, NPS RSR, Fleet Management, First Reliance and

Capture Financial violated of the MOC including, but not limited to, the

following: M.C.L. §§ 339.915, 339.917, and 339.918.

118.    Ms. Bysouth has suffered damages as a result of these violations of the

MOC

119.   These violations of the MOC were willful.

### COUNT IV – Michigan Collection Practices Act as alternative to claims under the Michigan Occupational Code (All Defendant Companies)

120.   Ms. Bysouth incorporates the preceding allegations by reference.

121.   MLA Holding, SSC, JMK, NPS RSR, Fleet Management, First Reliance and Capture Financial are each a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(I).

122.   Defendant Companies' foregoing acts, with the exclusion of Great Rock's, in attempting to collect this alleged debt against Ms. Bysouth constitute violations of the MCPA including, but not limited to, the following: M.C.L. §§ 445.252.

123.   Ms. Bysouth has suffered damages as a result of these violations of the MCPA.

124.   These  violations of the MCPA were willful.

### Demand for Jury Trial

125.   Ms. Bysouth demands trial by jury in this action.

### Demand For Judgment for Relief

126.   *Accordingly, Ms. Bysouth requests that the Court grant:*

   a.      *Equitable relief under statute and common law, in the form of a*

23

*declaration that the amount sought by Defendants is not actually*

*owed and an injunction prohibiting further collection of those*

*amounts.*

b.      *Actual damages for items including emotional distress, mental*

*anguish, frustration, humiliation, and embarrassment.*

c.      *Statutory damages.*

d.      *No less than treble damages.*

e.      *Statutory costs and attorney fees.*

Respectfully Submitted,


By:  s/ Ian B. Lyngklip
Amanda M. Longendyke (P77777)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Kelly Bysouth
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Amanda@michiganconsumerlaw.com

Dated:  September 2, 2014